**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald J Peck,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-22-00907-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Donald Joseph Peck's Applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act by the Commissioner of the Social Security Administration ("Commissioner"). On May 26, 2022, Plaintiff filed a Complaint with this Court, seeking judicial review of the denial of benefits. (Doc. 1.) On August 5, 2022, Defendant Commissioner filed an Answer. (Doc. 8.) The Court now addresses Plaintiff's Opening Brief (Doc. 10, "Pl. Br."), Defendant's Response Brief (Doc. 14, "Def. Br."), and Plaintiff's Reply Brief (Doc. 15, "Pl. Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 9, "R.") and will affirm the Administrative Law Judge's ("ALJ") decision.

**I.  Background**

   **A.  Procedural History**

On April 9, 2018, Plaintiff filed an application for Social Security Disability Insurance Benefits and an application for Supplemental Security Income, alleging a period of disability beginning on October 31, 2017. (Pl. Br. at 2.) Plaintiff's claim was initially

denied on June 11, 2018, and upon reconsideration on March 1, 2019. (R. at 124–27, 140–43.) On April 14, 2020, Plaintiff and an impartial vocational expert ("VE") appeared before the ALJ for a hearing regarding Plaintiff's application, which the ALJ denied on May 12, 2020. (R. at 15–23.) The Appeals Council denied Plaintiff's request for review on September 17, 2020, and the ALJ's decision became final. (R. at 1–6.)

On October 20, 2020, Plaintiff filed an appeal in this Court, seeking judicial review of the ALJ's decision. (Doc. 1 at 1.) Pursuant to the parties' stipulated remand, on June 24, 2021, this Court reversed the ALJ's denial of benefits and remanded to the Social Security Administration ("SSA") for further proceedings. (R. at 1044–45.) On July 15, 2021, the Appeals Council remanded the matter to the ALJ for a new hearing. (R. at 1047–50.)

On February 1, 2022, Plaintiff and an impartial VE testified at a new hearing held by the ALJ. (R. at 965.) On March 21, 2022, the ALJ again found Plaintiff not disabled and denied Plaintiff's application. (R. at 965–80.) This became the Commissioner's final decision.[1] Following the unfavorable decision, Plaintiff timely sought judicial review with this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1 at 1.)

**B.     ALJ Determination**

The Court has reviewed the medical evidence and the administrative record and will discuss pertinent evidence in addressing the issues raised by the parties. At step one of the five-step sequential analysis, the ALJ determined that Plaintiff has not engaged in substantial gainful activity during the period from Plaintiff's alleged onset date of October 31, 2017, through March 21, 2022. (R. at 968.) The ALJ evaluated the Plaintiff's disability based on the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, and bilateral carpal tunnel syndrome. (*Id.*) The ALJ further determined that Plaintiff did not have an impairment that met or equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 970.)

In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ found that

---

[1] *See* 20 C.F.R. § 404.984 (explaining that when a Federal court remands a case and the Appeals Council remands the case to an ALJ, the ALJ's decision "will become the final decision of the Commissioner after remand . . . unless the Appeals Council assumes jurisdiction of the case.").

Plaintiff's symptom testimony was inconsistent with the objective medical record. (R. at 978.) The ALJ also determined that the medical opinions of Plaintiff's examining doctor, Dr. Joshua Levy, and Plaintiff's treating nurse practitioner, Nurse Colleen McCarter, were inconsistent with the objective medical evidence of record and thus, unpersuasive. (R. at 974–77.) Instead, the ALJ found that the medical opinions of two State agency consultative examiners were consistent with the objective medical record and thus, persuasive. (R. at 978.) The ALJ also weighed the lay testimony of Plaintiff's girlfriend, Shelby Scott, and determined that it was unpersuasive and inconsistent with the objective medical record. (*Id.*) In consideration of the above, the ALJ found that Plaintiff had the RFC to perform medium work with additional manipulative limitations. (R. at 978–79.)

At step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" based on Plaintiff's age, education, work experience, and RFC. (R. at 979.) Therefore, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from the alleged disability onset date through the date of the ALJ's most recent decision. (R. at 980.)

## II.     Legal Standard

In determining whether to reverse an ALJ's decision, courts are to review only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the ALJ's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; indeed, it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ follows a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof as to the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, then at step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.  Discussion**

Plaintiff raises five arguments for the Court's consideration. (Pl. Br. at 2.) First, Plaintiff argues that the ALJ erred by failing to provide specific and legitimate reasons for not including the limitations assessed by two of Plaintiff's treating physicians in the RFC finding. (*Id.*) Second, Plaintiff contends the ALJ's conclusion that Plaintiff's spinal impairments do not meet the requirements specified in Listing 1.15 was erroneous. (*Id.*) Third, Plaintiff argues the ALJ erred in finding Plaintiff's symptom testimony unpersuasive without providing clear and convincing reasons. (*Id.*) Fourth, Plaintiff contends the ALJ erred by rejecting proffered lay witness testimony without providing germane reasons. (*Id.*) Lastly, Plaintiff argues the ALJ erred by relying on vocational testimony that was given in

response to an incomplete hypothetical question. (*Id.*)

### A. Medical Opinions

First, Plaintiff contends that the ALJ erred by finding the medical opinions of Nurse McCarter and Dr. Levy unpersuasive. (Pl. Br. at 11.) Conversely, the Commissioner contends that the ALJ adequately considered the supportability and consistency factors as required. (Def. Br. at 9.)

In 2017, the SSA amended its regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Here, Plaintiff's claim was filed on April 9, 2018; therefore, the revised rules apply. (R. at 284–85.) Unlike the prior regulations, the SSA's revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Lester v. Charter*, 81 F.3d 821, 830–31 (9th Cir. 1995) (requiring an ALJ provide "specific and legitimate reasons that are supported by substantial evidence in the record" when rejecting a treating physician's opinion). Instead, the revised rules require the ALJ to assess how persuasive each medical opinion is based on several enumerated factors. 20 C.F.R. §§ 404.1520c(a)–(b); 416.920c(a). The most important factors in assessing a medical opinion's persuasiveness are its supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." *Id.* § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(2)).

#### i. Nurse McCarter's Opinion

On October 16, 2018, Plaintiff's treating nurse practitioner, Nurse McCarter, completed a Physical Capacities Evaluation ("PCE"), indicating that Plaintiff could sit,

stand, or walk for fifteen minutes at any one time. (R. at 496.) In an eight-hour workday, Nurse McCarter estimated that Plaintiff would be able to sit, stand, or walk for less than one hour. (*Id.*) Nurse McCarter opined that Plaintiff could occasionally lift up to ten pounds, could occasionally bend, squat or reach, but he could not use his hands for fine manipulation, and could never crawl or climb. (*Id.*) Nurse McCarter also explained that Plaintiff's medications result in severe cognitive impairment and memory loss, and his impairments, including his pain, fatigue, decreased mobility, and inability to sit, stand, or walk, limit his activities. (R. at 497.) Lastly, Nurse McCarter determined that Plaintiff would have no limitations in paying attention, concentrating on tasks, or maintaining interpersonal relationships; however, Plaintiff would have mild limitations in responding to customary work pressure and moderate limitations in providing consistent work effort. (*Id.*)

The ALJ found Nurse McCarter's opinion unpersuasive because it was inconsistent with the objective medical evidence and her own treatment notes. (R. at 974.) Considering both supportability and consistency, the ALJ determined that Nurse McCarter's opinion was "internally inconsistent with the claimant's overall presentation and therefore unsupported." (*Id.*) The ALJ pointed to several examples where Nurse McCarter's opinion was not supported by the medical record. (*Id.*) For instance, the ALJ reasoned that Plaintiff's self-reported pain relief and subsequent examinations finding normal strength, flexion, extension, stability, gait, and range of motion in the wrists and spine were inconsistent with Nurse McCarter's findings that Plaintiff could not use his hands for fine manipulation or sit, stand, or walk for more than fifteen minutes at one time. (*Id.*)

An ALJ may properly reject a medical opinion if it lacks support from record evidence and is instead based solely on a claimant's subjective testimony or from testing within their control. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ here did just that. As discussed below, the ALJ properly rejected Plaintiff's symptom testimony based on its inconsistency with the medical record and Plaintiff's daily activities. Additionally, the ALJ determined that the objective medical record did not support the

extreme limitations opined by Nurse McCarter. (R. at 977.) Consequently, the Court declines Plaintiff's request to second-guess the ALJ's reasonable interpretation of the evidence, even if such interpretation could give rise to inferences more favorable to Plaintiff. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

### ii.     Dr. Levy's Opinion

Plaintiff also argues that the ALJ erroneously rejected Dr. Levy's medical opinion. (Pl. Br. at 11.) Dr. Levy conducted an independent medical examination of Plaintiff on March 11, 2019. (R. at 975.) As part of the examination, Dr. Levy completed a PCE and determined that Plaintiff would be able to sit for one hour and stand for thirty minutes at any one time. (R. at 744.) Dr. Levy noted that in an eight-hour workday, Plaintiff would be able to stand for less than two hours and sit for about two hours, with five-minute breaks each hour. (R. at 741–42, 744.) Dr. Levy also indicated that Plaintiff could occasionally lift objects up to twenty pounds, but Plaintiff could never squat, crawl, or climb ladders or stairs. (R. at 741, 744.) However, in Dr. Levy's physical examination of Plaintiff, he reported normal gait, stance, heel walk, toe walk, muscle tone, muscle bulk, and motor strength, as well as full range of motion, with functional limitations, in Plaintiff's extremities. (R. at 736–37.) Dr. Levy also completed a separate lumbar spine medical source statement, where he indicated that a full recovery was not anticipated. (R. at 740–43.) Further, Dr. Levy found that Plaintiff had a reduced range of motion of the cervical and lumbar spine, positive straight leg raises on the left at twenty degrees, muscle spasms, sensory loss, reflex changes, and tenderness. (*Id.*) Lastly, Dr. Levy completed a Listing 1.04 questionnaire, concluding that Plaintiff met or equaled the listing criteria. (R. at 746.)

On June 7, 2020, Dr. Levy issued a supplemental report, elaborating on two points from his assessment of Plaintiff's RFC. (R. at 1239–40.) First, Dr. Levy explained that his determination that Plaintiff can only handle, finger, and reach five percent (5%) of the workday with the left upper extremity is not contradictory to an electromyography ("EMG") study noting only "mild" carpal tunnel syndrome. (*Id.*) According to Dr. Levy, a diagnosis of mild carpal tunnel syndrome is misleading and "can still be sufficiently

disabling" despite being labeled "mild." (*Id.*) Second, Dr. Levy asserted that his RFC finding regarding Plaintiff's physical limitations were not inconsistent with a physical examination showing normal strength, flexion, extension, stability, reflexes, and gait. (*Id.*) Dr. Levy explained that although "his gait was normal," Plaintiff ambulated for thirty minutes or less after a period of sitting, and Dr. Levy claimed that his findings "are reasonably expected to be consistent" with other objective findings like an MRI from April 14, 2018. (*Id.*)

The ALJ ultimately found Dr. Levy's opinion to be unpersuasive because it was generally "inconsistent with the objective medical evidence of record." (R. at 977.) As to consistency, the ALJ explained that Dr. Levy's extreme limitations were not consistent with medical findings that Plaintiff responded positively to treatment and exhibited normal strength, gait, and range of motion in the wrists and spine. (*Id.*) With respect to supportability, the ALJ reasoned that Dr. Levy's "opinion in general supports itself by saying it's 'reasonably consistent' with the findings. However, it is not consistent with the remainder of the file that shows significantly less restriction." (R. at 977.) The ALJ also explained that the limitations proposed by Dr. Levy were conjectural, since Dr. Levy based those limitations on what could be "reasonably expected" from Plaintiff's MRI results, rather than the objective evidence in the record. (*Id.*)

Again, an ALJ may properly reject a medical opinion if it lacks support from the medical record and is instead based only on a claimant's subjective testimony or from testing within their control. *See Tonapetyan*, 242 F.3d at 1149. Because the opinions of Nurse McCarter and Dr. Levy similarly lacked support from the medical record and were instead based almost entirely on Plaintiff's subjective testimony, which the ALJ found not credible, the ALJ properly gave less weight to each opinion. Accordingly, this Court finds no error in the ALJ's decision. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (explaining that a district court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

**B.     Statutorily Defined Impairments**

Plaintiff also argues that remand is necessary because the ALJ's determination that Plaintiff's spinal impairments did not meet Listing 1.15 was erroneous. (Pl. Br. at 11–13.) At step three, an ALJ is asked to assess whether the claimant has an impairment or combination of impairments that meets or medically equals an impairment listed in the Appendix to the federal regulations. 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ determined that Plaintiff's spinal impairments did not meet or medically equal the requirements of Listing 1.15 or any other listing in 20 C.F.R., Part 404, Subpart P, Appendix 1. (R. at 970.) Plaintiff contends that this "one boilerplate sentence" is insufficient, and other evidence in the record supports a finding that Plaintiff meets the requirements of Listing 1.15. (Pl. Br. at 12–14.) In response, the Commissioner argues that "the record was essentially devoid of evidence to suggest that Plaintiff met or equaled [Listing 1.15's] criteria." (Def. Br. at 13.)

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (citing 20 C.F.R. § 404.1526) (emphasis in original). Conversely, "[t]o *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment. . . ." *Id.* (emphasis in original). "A determination of equivalency requires the testimony of a medical expert." *James v. Apfel*, 174 F. Supp. 2d 1125, 1129 (W.D. Wash. 2001). A claimant bears the burden in showing that he or she meets all the medical criteria. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020).

Listing Impairment 1.15[2] covers "[d]isorders of the skeletal spine resulting in a

---

[2] On April 2, 2021, the SSA revised the criteria in the Listings of Impairments, replacing Listing 1.04 with the current Listing 1.15. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164, 78179–80 (Dec. 3, 2020). Plaintiff filed his application on April 9, 2018. (Pl. Br. at 2.) Ordinarily, the listing requirements that are in effect when a claimant filed his or her application govern. *Maines v. Colvin*, 666 F. App'x 607, 608 (9th Cir. 2016) ("A claimant's eligibility for benefits, once determined, is effective based on the date his or her application is filed. Absent express direction from Congress to the contrary, the ALJ should have continued to evaluate [the claimant's] application under the listings in effect at the time she filed her application.") (internal citation omitted). However, when a federal court remands a case for further administrative

compromise of a nerve root(s)." 20 C.F.R. § 404, Subpart P, Appendix 1. Listing 1.15 requires documentation of four factors, including:

> A. Neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s):
> 1. Pain; or
> 2. Paresthesia; or
> 3. Muscle fatigue. AND
>
> B. Radicular distribution of neurological signs present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:
> 1. Muscle weakness; and
> 2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
> 3. Sensory changes evidenced by:
>    a. Decreased sensation; or
>    b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or
> 4. Decreased deep tendon reflexes. AND
>
> C. Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine. AND
>
> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
> 2. An inability to use one upper extremity to

---

proceedings—as is the case here—an ALJ must apply the revised rules in considering a claimant's application. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 n.2 (Dec. 3, 2020) ("If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand."). Therefore, Plaintiff's impairments were properly assessed according to Listing 1.15.

> independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

*Id.*

Here, the ALJ assessed the Plaintiff's spinal and joint impairments under Listing 1.15 and found that the evidence did not support a finding that Plaintiff's impairments met or equaled the requirements of Listings 1.15, 1.16, or 1.18. (R. at 977.) The ALJ explained that since Listing 1.04 does not apply, Dr. Levy's questionnaire does not support the finding that Plaintiff's impairments meet Listing 1.15. (*Id.*)

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. (Pl. Br. at 11.) Instead, Plaintiff contends that he met his burden, relying principally on a Listing 1.04 questionnaire completed by Dr. Levy, whereby Dr. Levy found that Plaintiff's impairments met or equaled Listing 1.04's requirements. (R. at 975.) However, the SSA has since revised the regulations, such that Listing 1.04 is inapplicable. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164, 78179–80 (Dec. 3, 2020). Plaintiff also relies on an MRI from April 2018 of Plaintiff's lumbar and cervical spine, arguing that the MRI satisfies the first requirement if Listing 1.15. (Pl. Br. at 13.) According to Plaintiff, Dr. Levy's examination notes satisfy the other requirements of Listing 1.15. (*Id.*)

As noted above, the ALJ properly rejected Dr. Levy's testimony as unpersuasive. Aside from Dr. Levy's opinions, Plaintiff has not pointed to other evidence in the record to suggest his impairments meet each requirement provided in Listing 1.15. *See Harris v. Barnhart*, 65 Fed. App'x 129, 132 (9th Cir. 2003) (per curiam) (unpublished) (rejecting a

claimant's argument "that the ALJ erred in making a 'boilerplate finding' that her impairments did not meet or equal any of those listed in the Listing of Impairments . . . even though forms completed by [the claimant's treating physicians] indicated that she did meet specific listings"). In fact, evidence from State medical examiners supports the ALJ's determination that Plaintiff does not meet or equal the requirements of Listing 1.15. (R. at 978.) For instance, one of the State examiners found that the "[f]indings on imaging are nominal and inconsistent with subjective allegations as well as objective documentation." (R. at 73.) Since Plaintiff has not carried his burden to demonstrate that he meets all the medical criteria of Listing 1.15, the Court detects no error in the ALJ's decision.

### C. Plaintiff's Symptom Testimony

Next, Plaintiff argues that the ALJ erred in rejecting his symptom testimony without providing clear and convincing reasons. (Pl. Br. at 16.) In opposition, the Commissioner contends that the ALJ did not err because the ALJ explained that Plaintiff's testimony was inconsistent with the objective medical record and Plaintiff's daily activities. (Def. Br. at 17.)

In evaluating a claimant's symptom testimony, the ALJ employs a two-step process. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Second, if the claimant presents such evidence, the ALJ must evaluate the claimant's testimony in light of the objective medical evidence and other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3). "[T]he ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Under the clear and convincing standard, the ALJ "must specifically identify the

testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (noting that the clear and convincing "standard requires an ALJ to show his work"). An ALJ may consider several factors, including: (1) the testimony's consistency with the objective medical record; (2) the claimant's daily activities; and (3) whether the claimant's treatment is conservative. *See id.* at 497.

Here, Plaintiff testified that his impairments cause extreme limitations. (R. at 971.) Specifically, Plaintiff claimed that he has pain in his back, neck, and hands, severe enough to where he cannot stand for more than ten or fifteen minutes at any one time, he cannot drive long distances, and he can only walk for five minutes at any one time. (R. at 43, 45, 51, 971.) The ALJ ultimately rejected Plaintiff's symptom testimony, offering two reasons. (R. at 977–78.)

### i. Inconsistency with Objective Medical Record

First, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 978.) In his decision, the ALJ considered the Plaintiff's testimony in light of the objective medical results contained in the record. (*Id.*) The ALJ found that Plaintiff has degenerative disc disease of the cervical spine and lumbar spine, as well as bilateral carpal tunnel syndrome. (R. at 968.) The medical records from 2018 exhibited some positive clinical findings, including decreased range of motion in the cervical and lumbar spine, bilateral spasms of the traps and paraspinal, positive Spurling's, osteoarthritis deformities in his fingers, and a limping gait. (R. at 971–72.) The ALJ noted, however, that subsequent examinations yielded inconsistent findings, including normal range of motion, normal gait, full strength at 5/5 bilaterally, and reported decreases in pain after physical therapy and occupational therapy. (R. at 972–73.) By pointing to the evidence that is inconsistent with Plaintiff's symptom testimony, the ALJ articulated one clear and convincing reason to reject Plaintiff's testimony. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record," courts

"may not engage in second-guessing").

Ordinarily, a "lack of [corroborating] medical evidence cannot form the sole basis for discounting pain testimony," but that is not the case here. *Burch*, 400 F.3d at 680–81. The ALJ found that Plaintiff's symptom testimony is not only unsupported by the medical record but is also inconsistent with Plaintiff's self-reported daily activities. *See id.* at 681 (recognizing that an ALJ is "permitted to consider daily living activities" in assessing the credibility of a claimant's testimony, especially "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace"). For these reasons, the ALJ properly relied on the objective medical record in rejecting Plaintiff's symptom testimony.

### ii. Plaintiff's Daily Activities

The ALJ's second reason for rejecting Plaintiff's testimony is that Plaintiff's reported daily activities were inconsistent with Plaintiff's alleged limitations. (R. at 978.) While a claimant is not required to be completely incapacitated to be found disabled, an ALJ may consider a claimant's daily activities to determine whether they are "inconsistent with the alleged symptoms." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (permitting consideration of a claimant's daily activities when weighing symptoms). A district court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40.

In his decision, the ALJ referenced activities in the record which undermined Plaintiff's allegations of the debilitating degree of his impairments. (*See* R. at 971–73.) For instance, Plaintiff completed two exertional activity questionnaires in 2018, and in both, Plaintiff explained that he spends time resting, but will cook his own food, check on his friend's dogs, and clean his dishes. (R. at 318–20, 338–40.) While Plaintiff testified that he cannot fold his own laundry due to the pain, he also stated that he can complete household chores, grocery shop, or drive short distances. (*Id.*) Plaintiff also explained that he cares for his friends' dogs and plants, and once a month, he "lift[s] a 15lb bag of dog food" and

carries it from the car to the porch. (*Id.*)

Where the "record reflects that the claimant has normal activities of daily living including cooking [and] house cleaning . . . [this] suggest[s] that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). The present record indicates that Plaintiff participates in normal activities of daily living. (*See* R. at 318–20, 338–40, 971–73.) Plaintiff cares for animals, drives his vehicle short distances, cleans his dishes, and shops for groceries. (R. at 318–20, 338–40.) A claimant's daily activities serve as proper context to an ALJ's credibility determinations, and the ALJ did not err in considering them here. Therefore, the Court finds the ALJ properly relied on specific, clear and convincing reasons supported by substantial evidence in rejecting Plaintiff's symptom testimony.

        **D.**     **Lay Witness Testimony**

Plaintiff also contends that the ALJ erred in rejecting lay witness testimony without providing "germane reasons" for doing so. (Pl. Br. at 18–19.) Plaintiff's girlfriend, Shelby Scott, completed a questionnaire regarding Plaintiff's limitations. (R. at 330–36.) The ALJ found Ms. Scott's testimony unpersuasive because it was not supported by the medical evidence of the record. (R. at 978.) Plaintiff argues that the ALJ erred in rejecting Ms. Scott's testimony because the testimony is consistent with the medical opinions of Dr. Levy and Nurse McCarter. (Pl. Br. at 19.) In response, Commissioner contends that the ALJ complied with applicable regulations when rejecting Ms. Scott's testimony. (Def. Br. at 23.)

Prior to March 27, 2017, the Ninth Circuit recognized that "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511. Accordingly, lay witness testimony generally could not be "disregarded without comment." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996)). The SSA has since amended the regulations that govern the evaluation of medical evidence for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The new regulations provide: "We are not required to articulate how we consider evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d).

Here, Plaintiff presumes that the original standard continues to apply to claims filed after March 27, 2017 (Pl. Br. at 19); however, the Commissioner contends that the SSA's amended regulations supersede Ninth Circuit caselaw on this issue and do not require an ALJ to expressly address nonmedical evidence, including lay witness testimony. (Def. Br. at 23.) The Ninth Circuit has not specifically addressed the meaning of this provision or whether the germane reasons requirement survives this enactment of § 404.1520c(d). *Compare Muntz v. Kijakazi*, No. 22-35174, 2022 WL 17484332, at *2 (9th Cir. Dec. 7, 2022) (applying the "germane reasons" standard to ALJ's decision discounting a third-party function report from claimant's husband) *with Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022) (noting that "[i]t is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions").

Nonetheless, this Court does not need to weigh in on the effect of Section 404.1520c(d) because the ALJ provided germane reasons for rejecting the lay witness testimony. According to the Ninth Circuit, "[o]ne reason for rejecting lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511; *see also Tanya L. L. v. Comm'r of Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021) ("Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony generally repeat[s] the properly discredited testimony of a claimant.") (internal citations and quotations omitted). In this case, the ALJ determined that he was "unable to find Ms. Scott's statement more persuasive because it, like the claimant's, is

generally not consistent with the preponderance of the medical evidence. . . ." (R. at 978.) Because the ALJ determined that the lay witness testimony was not consistent with the preponderance of the medical evidence,[3] the ALJ satisfied the germane reasons requirement. The ALJ did not err in rejecting the lay witness testimony.

### E. Vocational Expert Testimony

Lastly, Plaintiff argues that the ALJ erred in relying on the VE's testimony that was given in response to an incomplete hypothetical question. (Pl. Br. at 19–20.) Once a claimant shows that he cannot perform past relevant work, as is the case here, the Commissioner bears the burden in proving that the claimant can engage in substantial gainful activity. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The Commissioner can satisfy this burden "by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)).

In this case, Plaintiff contends that the ALJ did not explain all of Plaintiff's limitations and restrictions because the ALJ excluded Plaintiff's symptom testimony, the lay witness testimony, and the opinions of Dr. Levy and Nurse McCarter when posing the hypothetical question to the VE. (Pl. Br. at 19–20.) According to Plaintiff, the ALJ's RFC determination was not supported by substantial evidence because the ALJ relied on the VE's incomplete testimony. (*Id.*) In response, the Commissioner argues that the ALJ was not required to include the alleged limitations because they were not supported by substantial evidence in the record. (Def. Br. at 24.)

The Ninth Circuit has held that when an ALJ poses a hypothetical question to a VE, the ALJ must only set out the limitations and restrictions that are supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."). Put differently, an

---

[3] Plaintiff argues that the lay witness testimony is consistent with the medical opinions of Dr. Levy and Nurse McCarter. (Pl. Br. at 19.) However, the ALJ ultimately found those opinions inconsistent with the objective medical record, and this Court will uphold that decision for reasons stated in this Order.

- 17 -

ALJ may exclude those alleged limitations that are not adequately supported by the record. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (explaining that "[i]f the assumptions in the hypothetical are not supported by the record, the opinion of the [VE] that claimant has a residual working capacity has no evidentiary value"). Because the ALJ determined that Plaintiff's symptom testimony, the medical opinions of Dr. Levy and Nurse McCarter, and the lay witness testimony were not supported by substantial evidence in the record, the ALJ did not err in excluding these limitations when posing the hypothetical question to the VE.[4]

## IV. Conclusion

Accordingly,

**IT IS ORDERED** affirming the March 21, 2022 decision by the Administrative Law Judge. (R. at 980.)

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment consistent with this Order and close this case.

Dated this 30th day of August, 2023.

Michael T. Liburdi
United States District Judge

---

[4] Plaintiff also asks this Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 20–21.) Because the Court has affirmed the ALJ's decision, an evaluation of the parties' arguments as to remand is not necessary.